

**FILED**

**July 6, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:30 A.M.**

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sisouphahn Thysavathdy | ) | Docket No. 2014-05-0026 |
| | ) | |
| v. | ) | |
| | ) | State File No. 87347-2014 |
| Bridgestone Americas Tire | ) | |
| Operations, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Audrey A. Headrick, Judge | ) | |

_____

### Affirmed and Certified as Final – Filed July 6, 2017

_____

The employee, a worker at a tire manufacturer, alleged injuries to his left shoulder as a result of picking up tires at work. The authorized treating physician was unable to identify a specific work-related injury to the employee's left shoulder, while the employee's physician opined that the shoulder condition was multifactorial. Following a trial on the merits, the court concluded the employee had presented insufficient proof to rebut the presumption of correctness afforded the authorized treating physician's opinion and denied the claim. The employee has appealed, arguing he presented sufficient medical proof to establish he sustained an injury arising primarily out of his employment. We affirm the trial court's denial of benefits, dismiss the case, and certify the trial court's order as final.

Judge David F. Hensley delivered the opinion of the Appeals Board in which Presiding Judge Marshall L. Davidson, III, and Judge Timothy W. Conner joined.

Steve C. Norris, Nashville, Tennessee, for the employee-appellant, Sisouphahn Thysavathdy

Leslie F. Bishop, Knoxville, Tennessee, for the employer-appellee, Bridgestone Americas Tire Operations

**Factual and Procedural Background**

Sisouphahn Thysavathdy ("Employee") alleged suffering an injury to his left shoulder on July 15, 2014 while employed by Bridgestone Americas Tire Operations ("Employer"). He claimed that while "pulling tires," he picked up a tire and immediately felt pain in his left shoulder. His testimony that he informed his supervisor of the incident the following day was unrefuted. He testified that he continued working after his injury, that he used his right arm to lift tires, and that his co-workers helped him as necessary until September 10, 2014, when he left work because of pain in his left shoulder.

Employee first sought medical treatment following his alleged injury on September 11, 2014, when he presented to a walk-in medical clinic complaining of a cough and chest pain. Although the record of that visit reflected only those complaints, Employee testified he went to the clinic to seek treatment for his shoulder injury. The report noted that he experienced "pain in arm [illegible] with use and movement," and that he had a "pacemaker placed in 3/2014."[1] While the report stated Employee worked "at Bridgestone and pulls tires all day," it did not indicate Employee sought treatment for symptoms related to his work activities or a work injury.

Five days after Employee's treatment at the walk-in clinic, he sought further medical care from his primary care provider, Dr. Steven Johnson, complaining of left upper chest and shoulder pain for the past two weeks that he reported was "[e]xacerbated by his work." While the patient history in Dr. Johnson's report stated Employee related his chest, arm, and shoulder soreness to his job, it also noted Employee had a pacemaker implanted, and that he "[h]as always been sore since implanted." At trial, Employee testified he told Dr. Johnson he was injured pulling a tire. However, there is no mention of a work-related accident in Dr. Johnson's records. Notes from a follow-up appointment a few days later indicate Employee "continue[d] to have left chest and axillary pain" and "some ongoing coughing." Employee was terminated on September 15, 2014, based upon Employer's attendance policy.

In November 2014, Employee filed a petition for benefit determination. Employer responded by providing a panel of physicians from which Employee selected Dr. Vincent Novak as his authorized treating physician. His only visit with Dr. Novak was on December 29, 2014, at which time he reported left shoulder pain occurring over the past five or six months. The report stated that the pain occurred "with no known acute injury." At trial, Employee testified he was presented with a medical history form at Dr. Novak's office and that he wrote his name on the document and indicated he had been

---

[1] Employee had a pacemaker implanted in December 2013 and had been off work recovering from that procedure since the surgery. He returned to work approximately one week prior to his alleged shoulder injury.

having "this problem" since July 15, 2014.  He testified he "took [the document] up to the counter and told the lady there that [he didn't] know how to fill it out and they helped [him]."  The handwritten information in the document stated that Employee was a material handler with Employer and that his chief complaint was left shoulder pain that "hurt[s] with movement."  In response to a question on the form asking "[h]ow did it happen," the handwritten response stated "using [left] arm pulling tires."  Three boxes on the form were checked indicating Employee's July 15, 2014 injury was "work related," that it was reported to Employer, and that Employee did not have any previous work-related injuries.  In addition, it indicated the severity of Employee's pain to be "9-10," and that "using arm, moving" made his symptoms worse.  The form reflected a surgical history of "pacemaker April 2014," and stated that Employee "returned to work July 7."

The narrative report from Dr. Novak's December 29, 2014 examination, which commented that Employee "appears to verbally communicate effectively,"[2] included the following:

> He presents to see me for the first time today for problems with his left shoulder/upper arm, which he attributes to his work at [Employer].  The patient presents with his son today, complaining of left shoulder pain with movement/activities, better with rest for the last 5 to 6 months.  The patient reports working as a material handler, "finding, pulling tires, and placing them on racks," sometimes "8 to 10 to 12 hours a day" which is the same job he has had for approximately 7 hours [sic].  He reports these tires would typically weigh a maximum of 30 to 40 pounds each. . . . Today he presents to me complaining of some slow progressive worsening of left shoulder/axillary pain over the last [] 6 months with no known acute injury.  The patient's estimated date of onset is "7/15/14," though again he denies any specific acute injury (no specific mechanism, location, specific date/time).  According to his case manager . . . who is present today – this was not reported to his employer until "November 2014."

Dr. Novak's report also reflected that he had reviewed prior medical reports, including a September 16, 2014 clinic note from Dr. Johnson indicating that Employee's pain "has been [present] for 2 weeks, exacerbated by his work," and that Employee "has always been sore since [pacemaker] implanted . . . shoulder and arm and chest feel sore.  He feels this is related to his job."  Dr. Novak's assessment included left shoulder pain with stiffness and weakness and stated:

_____

[2] Employee is a native of Laos and has lived in the United States for a number of years.  He testified through an interpreter at trial and argued in the trial court that there was a communication barrier between Dr. Novak and him that could have resulted in inaccuracies in Dr. Novak's records.  Dr. Novak's records indicate Employee was able to communicate effectively, and Employee testified that he was able to communicate effectively with his physicians and with Employer during his seven years of employment.

Symptoms reportedly progressively worsening [for] 5 to 6 months with the patient unable to identify a specific acute injury or inciting event (no specific acute time, location, mechanism). The patient attributes these symptoms to his work. Possible bursitis, possible sprain/strain, possible internal derangement (such as rotator cuff/labral tear). Possible referred pain from the left chest/implanted [pacemaker] prior.

Addressing causation, Dr. Novak's report stated:

I am unable to identify any specific work-related injury to the patient's left shoulder – specifically as he is unable to identify any specific date/time, location or a specific/acute injury/mechanism which precipitated his pain/problems. I understand and appreciate that activities (including work) make his pain worse.

Upon receipt of Dr. Novak's report, Employer denied further benefits.

Reports of two physical therapy visits included with Dr. Novak's records indicate Employee was prescribed six weeks of physical therapy. Employee testified he was not able to attend physical therapy after Employer stopped paying for the visits. A January 23, 2015 physical therapy report indicated the onset of Employee's symptoms was July 15, 2014. However, the same report stated "[h]e reports symptoms began in October. [Patient] states his pain gradually increased since then. [Patient] states he thinks he has the pain secondary to repetitive lifting [at] work. [Patient] states he has been off work since September."

Following Employer's denial of the claim, Employee sought treatment from Dr. Roderick Vaughan, an orthopedic surgeon, who ultimately performed arthroscopic shoulder surgery on September 1, 2015. Post-operative records reflect that Employee had a "history of degenerative joint disease, rotator cuff syndrome and adhesive capsulitis."

The parties deposed Dr. Vaughan, who testified that he treated Employee for left shoulder pain, and that Employee "associated the onset of his symptoms with pulling a tire at work and localized the pain to the side of the shoulder." He explained that his "chief finding" was "limited range of motion," noting that Employee had "weakness of rotator cuff function." Dr. Vaughan obtained shoulder x-rays that showed arthritis. His initial assessment included left shoulder pain with evidence of rotator cuff syndrome, adhesive capsulitis, and underlying arthritis.

Dr. Vaughan testified that in addition to arthritis, objective testing showed evidence of thickening of the supraspinatus tendon. He stated that conservative treatment failed to alleviate Employee's pain and shoulder stiffness, so he performed arthroscopic surgery to remove adhesions in Employee's shoulder joint and to debride the shoulder.

4

He testified the surgery revealed a partial thickness tear of Employee's rotator cuff. The operative note stated "[d]egenerative tearing was noted involving the labrum." When asked whether he had an opinion as to what caused the condition for which he treated Employee, Dr. Vaughan said "I think it's potentially multifactorial; however, [Employee] associated the onset of his symptoms with specifically pulling a tire at work." When asked, "[a]ssuming the truth of the history [Employee] gave you of pulling tires at work, *do you have an opinion* as to whether that was the primary cause of the injury that you treated him for," he responded, "[y]es." (Emphasis added).

Dr. Vaughan was questioned extensively concerning Employee's report of pulling tires. He testified that he "questioned [Employee] specifically in regards to this, [and] that he recalled the specific event and moment of injury at which time his symptoms began." Dr. Vaughan testified "the reason [he] associate[d] [Employee's] symptoms predominately with his work injury is because [Employee] described it very specifically, that it was a single event that he clearly recalled." Dr. Vaughan was also asked whether the medical care and treatment he provided was "reasonable and necessary for the treatment of the injury that [Employee] sustained at work in July of 2014," and he responded, "[y]es."

On cross-examination, Dr. Vaughan was asked whether he was able to communicate effectively with Employee "so that you understood one another," to which he responded that he was. He stated that Employee did not have an interpreter present during visits, and testified "I'll make note, too, that in answer – just in follow-up of that brief answer, that when it came to the issue of was there a single event that you recall with the tire, I asked him that several times, and he reiterated that there was." Dr. Vaughan testified Employee had age-related degenerative disease in his left shoulder joint, including moderate arthritis at the acromioclavicular joint. He testified Employee's rotator cuff tear was not very substantial and included "two to three percent of the tendon thickness." He said he did not see anything during the surgery to indicate that the partial tear was acute, and he agreed he could not state with reasonable medical certainty that the rotator cuff tear occurred at a specific point in time, acknowledging also that Employee did not point to a specific date for his injury but did mention a month, stating "his symptoms began in mid-July, when he pulled a tire at work."

Upon further cross-examination, the following exchange occurred:

Q: No question in your mind, as we sit here today, and you recall from looking at your notes and remembering [Employee], that it was a one-time acute event, though; correct?

A: Well, I ask[ed] him, again, repeatedly if he had – if he recalled the event, and he indicated that he specifically recalled the event. You know, it's been so long. I don't know exactly everything that was discussed.

5

. . . .

Q: Okay. Could this tire pulling event simply had [sic] been something that caused an increase in pain in an already [sic] partial rotator cuff tear?

A: Yes.

Q: Okay. And I believe you have said in the past – and I'll quote this to you – that the degenerative joint disease was certainly preexisting. He indicated the onset of the symptoms was a specific pulling event. There's a potential for a partial rotator cuff tear, as well as the probability that this strain may have contributed to his adhesive capsulitis and/or regional pain syndrome. And that you estimate that it certainly is probable, in correlation with his history, that it's work-related. Is that still your opinion today, that it's just probable?

A: Yes.

Q: Okay.

A: Because as I mentioned earlier, adhesive capsulitis can be multifactorial. And that statement is very dependent upon the history provided by the patient.

. . . .

Q: Okay. He did have some other things. I believe that you testified on direct that his symptomatology was multifactorial, to use your word. What were the other factors?

Dr. Vaughan identified several factors that could have contributed to Employee's condition including age "[a]nd with age goes the underlying arthritis." He mentioned, as noted in his operative report, "there was chondromalacia there," which he described as "cartilage wear on the bone." He identified the "minimal partial thickness tear," but stated that "the predominant finding here really clinically is that of adhesive capsulitis." In addition, he stated that "prior surgery in the chest area can be a contributing factor, as well," noting Employee had a pacemaker implanted a few months prior to the July 2014 date of Employee's alleged injury. Finally, on cross-examination Dr. Vaughan was asked, "as we sit here today, I think your opinion is more likely than not that it was a multifactorial condition that you treated him for, and that remains your opinion; correct?" Dr. Vaughan answered, "[y]es."

On re-direct, Employee's counsel asked Dr. Vaughan to clarify whether there were

6

"two possible mechanisms of injury in the pulling a tire incident; one might be aggravating or causing a partial rotator cuff tear, and the other might be causing or aggravating adhesive capsulitis," to which Dr. Vaughan answered "correct," adding that "they're not mutually exclusive in that there is overlap there, too. In other words, most adults over 50 – well, I would say it's probable that most adults over 50 have some rotator cuff degenerative change, and we're more susceptible to these types of injuries."

At trial, Employee sought payment of medical benefits and temporary and permanent disability benefits. The parties' Joint Pre-Compensation Hearing Statement noted that the contested issues included compensability and causation and also included the stipulation that "Dr. Novak evaluated, opined the injury was not work related, and the claim was then denied."

The trial court determined that Dr. Novak's causation opinion was entitled to a rebuttable presumption of correctness because he was the physician selected by Employee from a panel in accordance with Tennessee Code Annotated section 50-6-204. The trial court stated that Dr. Vaughan indicated he had a causation opinion, but "did not verbalize it"; that Dr. Vaughan believed Employee's chest surgery to implant a pacemaker prior to the alleged work injury was "a potential or contributing factor associated with the formation of adhesive capsulitis"; and that Dr. Vaughan identified "other contributing factors involving [Employee's] age, such as underlying arthritis, cartilage wear, labral tear, rotator cuff degeneration and partial tearing." Noting Dr. Vaughan's testimony indicates that, "more likely than not, it was a multifactorial condition for which he treated [Employee]," the trial court concluded that, considering Dr. Vaughan's testimony as a whole, his testimony "does not satisfy the requirement that the tire-pulling incident 'more likely than not considering all causes, as opposed to speculation or possibility[,]' caused [Employee's] left shoulder condition." Accordingly, the trial court denied benefits, concluding "Dr. Vaughan's opinion fails to rebut the presumption of correctness given to Dr. Novak." Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2016). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

    (A)    Violate constitutional or statutory provisions;
    (B)    Exceed the statutory authority of the workers' compensation judge;
    (C)    Do not comply with lawful procedure;

(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or

(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2016).[3]

In addition, for injuries occurring on or after July 1, 2014, courts may not apply a liberal or remedial interpretation of the workers' compensation statutes, but must apply the law "fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116 (2016). Consistent with that mandate, the legislature has made clear that the workers' compensation statutes "shall not be construed in a manner favoring either the employee or the employer." *Id.*

**Analysis**

Employee presents a two-pronged attack on appeal, arguing the trial court erred in determining he failed to establish sufficient evidence of an injury by accident that arose primarily out of his employment. While acknowledging that the opinion of a treating physician selected from a panel is entitled to a presumption of correctness on the issue of causation, Employee asserts Dr. Novak's opinion stating he was "unable to identify any specific work-related injury" does not constitute a medical causation opinion and, alternatively, if it is a causation opinion, it is not credible. Additionally, Employee argues that Dr. Vaughan's testimony and records established a compensable injury and were sufficient to rebut any presumption of correctness applicable to Dr. Novak's opinion. For the reasons that follow, we find that Dr. Novak's opinion that Employee's injury was not work-related, as stipulated by the parties, is afforded a statutory presumption of correctness, and that Employee did not present sufficient medical evidence to overcome the presumption and establish a work-related injury that meets the requirements of Tennessee Code Annotated section 50-6-102(14) (2016).

At a compensation hearing where the parties have arrived at a trial on the merits, an employee must establish by a preponderance of the evidence that he or she is entitled to benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6) (2016) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). As a part of this burden of proof, an employee must establish that the injury for which benefits are sought is a compensable injury as contemplated by the statute. To be compensable, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14). An injury does not include an aggravation of a pre-existing disease or condition "unless it can be shown to a reasonable

---

[3] The notice of appeal in this case was filed prior to May 9, 2017, the effective date of the amendment deleting Tennessee Code Annotated section 50-6-217(a)(3).

8

degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A).

To establish that an injury arises primarily out of the employment, an employee must show "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D).

Moreover, it is well-established that "a trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp. Panel Dec. 30, 2014). In deciding which expert's view to accept, "[a trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). When one of those experts is an authorized treating physician, that expert's opinion on the issue of causation is afforded a presumption of correctness. Tenn. Code Ann. § 50-6-102(14)(E). It is for the trial court to determine the relative weight to be given to expert proof taking into account the presumption of correctness afforded the authorized physician, and we will not disturb that finding absent an abuse of discretion. *See Darraj v. McKee Foods Corp.*, No. 2015-01-0339, 2017 TN Wrk. Comp. App. Bd. LEXIS 4, at *9 (Tenn. Workers' Comp. App. Bd. Jan. 17, 2017).

*Dr. Novak's Causation Opinion*

Employee asserts that Dr. Novak's statement in his narrative report that he was "unable to identify any specific work-related injury" is not a causation opinion entitled to the statutory presumption of correctness, and alternatively, if it is, the opinion is not credible. In essence, Employee argues that Dr. Novak's inability to identify a specific work-related injury does not foreclose the possibility that such an injury occurred, emphasizing that Dr. Novak does not state that Employee *did not* suffer an injury arising out of his employment but instead was simply "unable to identify" a specific work-related injury. Employee attacks the credibility of Dr. Novak's opinion based upon information included in the medical history form completed in Dr. Novak's office, which Employee argues contradicts the statement in Dr. Novak's report that Employee was

"unable to identify any specific date/time, location or a specific/acute injury/mechanism which precipitated his pain/problems."

Initially, we note that in advance of the January 30, 2017 trial, the parties submitted written stipulations of numerous findings of fact and conclusions of law, including the following:

> Employee selected Dr. Vincent Novak from a panel which was properly provided. Dr. Novak evaluated, opined the injury was not work related, and the claim was then denied.

Based on this stipulation, we conclude Dr. Novak's opinion that Employee's injury was not work-related is entitled to a presumption of correctness as provided in Tennessee Code Annotated section 50-6-102(14)(E). The question then becomes whether the preponderance of the evidence rebuts the presumption.

*Dr. Vaughan's Testimony*

Employee argues that Dr. Vaughan's testimony and records satisfied Employee's burden of proving he suffered a compensable injury on July 15, 2014, and rebutted Dr. Novak's opinion that his injury was not work-related. The undergirding of Employee's argument is that Dr. Novak's opinion is not credible, and that Dr. Vaughan's testimony, taken as a whole, meets the requirements set out in Tennessee Code Annotated section 50-6-102(14) for a compensable injury. For the reasons noted below, we do not find Employee's argument persuasive.

Dr. Vaughan unquestionably was of the opinion that Employee associated the onset of his symptoms with a single incident of pulling a tire in July 2014. Also, in his deposition he testified that following his initial examination of Employee, he noted "left shoulder pain with evidence of a rotator cuff syndrome and adhesive capsulitis . . . and underlying arthritis." He testified he surgically removed the adhesions and debrided and decompressed the shoulder, stating that the surgery allowed him to make an additional diagnosis of "a partial thickness tear of [Employee's] rotator cuff."

Dr. Vaughan was asked whether he had an opinion as to what caused the condition he treated and responded, "yes." When asked what his opinion was, he stated "it's potentially multifactorial," noting again that Employee "associates the onset of his symptoms with specifically pulling a tire at work." He was then asked, "assuming the truth of the history [Employee] gave you of pulling tires at work, do you have an opinion as to whether that was the primary cause of the injury that you treated [Employee] for?" Although he responded in the affirmative, he was not asked to express that opinion, and he did not clarify the meaning of his "yes" response. He did, however, agree that the medical care he provided was "reasonable and necessary for the treatment of the injury

10

that [Employee] sustained at work in July of 2014." He was asked about Employee's adhesive capsulitis and testified it "can be multifactorial," stating that prior chest surgery "can be associated with the formation of adhesive capsulitis," and that the prior chest surgery "is a potential or contributing cause here."

On cross-examination Dr. Vaughan stated that neither the x-rays he obtained nor the surgery revealed an acute finding. He testified he had no way to determine from the CT arthrogram whether the partial rotator cuff tear occurred at a specific point in time other than what Employee told him, and he stated the tire-pulling incident could have been something that caused an increase in pain in an already existing partial rotator cuff tear. He agreed that Employee's degenerative disease pre-existed the work incident. When asked whether it was still his opinion that Employee's shoulder strain may have contributed to his adhesive capsulitis and that "it certainly is probable, in correlation with his history, that it's work-related," Dr. Vaughan agreed "that [it is] still [his] opinion today, that it's just probable." Dr. Vaughan added that, "as [he] mentioned earlier, adhesive capsulitis can be multifactorial. And that statement is very dependent upon the history provided by the patient."

When questioned further concerning his statement that Employee's condition was "multifactorial," he identified factors that may have contributed to Employee's condition including his age, findings suggestive of arthritis, and a partial thickness tear of the rotator cuff. He testified "the predominant finding here really clinically is that of adhesive capsulitis," and stated that "prior surgery in the chest area can be a contributing factor as well." When asked specifically about the "time relationship between [implantation of] the pacemaker and the adhesive capsulitis," Dr. Vaughan reiterated that the prior surgery could be a contributing factor. Finally, on cross-examination Employer asked, "[s]o really, as we sit here today, I think your opinion is more likely than not that it was a multifactorial condition that you treated him for, and that remains your opinion; correct?" We find Dr. Vaughan's response, "[y]es," to be significant.

Although Employee questioned Dr. Vaughan on redirect about two possible mechanisms of injury in the incident, Dr. Vaughan's response did not address causation. He simply noted that the two were not mutually exclusive and may overlap, adding "it's probable that most adults over 50 have some rotator cuff degenerative change, and we're more susceptible to these type injuries." Based upon our review of the record, we are unable to conclude that Employee established that the condition in his left shoulder as described by Dr. Vaughan arose primarily out of the July 15, 2014 incident when all causes are considered. To hold otherwise would necessarily require us to rely on speculation and mere possibility. While it is not necessary for a physician to "use particular words or phrases included in the statutory definition of 'injury' to establish the requisite medical proof to succeed at trial," it is necessary that a physician's testimony be sufficient to satisfy "the statutory requirements of an injury as defined in [Tennessee Code Annotated] section 50-6-102(14)." *Panzarella v. Amazon.com, Inc.*, No. 2015-01-

0383, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (Tenn. Workers' Comp App. Bd. May 15, 2017). Applying the law "fairly, impartially, and in accordance with basic principles of statutory construction" and avoiding a liberal or remedial interpretation, as we must under Tennessee Code Annotated section 50-6-116, we cannot conclude the trial court erred in its evaluation of the medical proof. Therefore, we affirm the trial court's determination and dismiss the case.

## Conclusion

We hold that the evidence does not preponderate against the trial court's determination that Employee failed to establish a compensable injury to his left shoulder occurring on July 15, 2014. Furthermore, we find that the trial court's order does not violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, we affirm the trial court's order, dismiss Employee's case, and certify the trial court's order as final.

**FILED**

**July 6, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 10:30 A.M.**



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Sisouphahn Thysavathdy | ) | Docket No. 2014-05-0026 |
| | ) | |
| v. | ) | State File No. 87347-2014 |
| | ) | |
| Bridgestone Americas Tire | ) | |
| Operations, et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 6th day of July, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Steve C. Norris | | | | | X | steve@stevecnorris.com |
| Leslie F. Bishop | | | | | X | lbishop@lewisthomason.com |
| Audrey A. Headrick, Judge | | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

*Matthew Salyer*

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov